**SO ORDERED.**

**SIGNED this 20 day of July, 2006.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE
_____

# United States Bankruptcy Court
**Western District of Texas**
**San Antonio Division**

| IN RE | BANKR. CASE NO. |
|---|---|
| JESSE A. MENDOZA & IDALIA M. MENDOZA | 06-50297-C |
| *DEBTORS* | CHAPTER 7 |

### DECISION REGARDING REAFFIRMATION AGREEMENT

CAME ON for consideration the foregoing matter. The debtor filed a reaffirmation agreement pursuant to 11 U.S.C. § 524(c). This section generally provides that a debtor may agree to reaffirm a debt, excusing the creditor from the effects of the bankruptcy discharge. *See* [case citation]. Congress amended this section of the Code in BAPCPA, effective October 17, 2005. New subsection 524(c)(2) now provides, as one of the pre-conditions for the approval of such agreements, that "the debtor receive[] the disclosures required in subsection (k) at or before the time at which the debtor signed the agreement." 11 U.S.C. § 524(c)(2). New subsection (k)(4) now specifies the contents of a new reaffirmation form. *See* 11 U.S.C. § 524(k)(4). Subsection (k)(5) then sets out the exact language of the attorney's declaration. *See* 11 U.S.C. § 524(k)(5).

In "Part C: Certification by Debtor's Attorney (if any)" the attorney is to sign a certification to the following effect:

> I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement.

11 U.S.C. § 524(k)(4)(A) (Part C: Certification by Debtor's Attorney (If Any)). If a presumption of undue hardship *has* been established (at least in the opinion of the attorney making the certification, in any event), then the certification must also state that "in the opinion of the attorney, the debtor is able to make the payment."[1]

In service to this new statutory provision, the Judicial Conference adopted a new form, Form B240. The form contains a Part C, as directed by the statute. It offers two certification paragraphs that track the language of the statute exactly, and contains a direction at the top advising the attorney to "check each applicable box." The first paragraph (with a box to be checked next to it), sets out the certification in section 524(k)(5)A) *verbatim*. The second paragraph (also with a box to be checked next to it), closely follows the directive in section 524(k)(5)(B), and appears in the form as follows:

> *[If applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Form B240, Part C: Certification by Debtor's Attorney (If Any). To determine whether an undue hardship presumption has arisen, one consults Part D of the form. There, the form calls upon the debtor to fill out and certify the following paragraph:

---

[1] Presumably, the attorney is not statutorily directed to certify to a falsehood. Thus, if a presumption of undue hardship has been established and the attorney does *not* believe that the debtor is able to make the payment, then, of course, the attorney should not sign a certification to the contrary. The presumption of undue hardship arises whenever the debtor's monthly income less monthly expenses does not leave enough to make the payments. *See* 11 U.S.C. § 524(6)(A) (Part D: Debtor's Statement in Support of Reaffirmation Agreement).

> I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $ _____, and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $ _____, leaving $ _____ to make the required payments on this reaffirmed debt. I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here: _____.

Form B240, Part D: Debtor's Statement in Support of Reaffirmation Agreement. Fairly obviously, if the debtor's monthly expenses exceed the debtor's total monthly income, such that there is not enough to make the reaffirmation payments, a presumption of undue hardship ought to arise.[2] The form, consistent with the language of the statute, affords the debtor an opportunity to explain how the debtor, in spite of appearances, *can* afford to make the payments.[3]

According to both the form and the statute, the court has the obligation to review any agreement which imposes an undue hardship, but the statute does not address how that review is expected to occur. The statute itself contemplates that reaffirmation agreements are *not* set for hearing before the court so long as the debtor was represented by counsel and the debtor has signed the requisite certifications. If the debtor is *not* represented by counsel, the statute now specifies the contents of the motion that may be used by the debtor to obtain the required hearing.[4] The form, per

---

[2] One could even argue that the arithmetic calculation alone confirms by a preponderance of the evidence that the reaffirmation agreement *is* an undue hardship. After all, the debtor certainly cannot make the payments to which the debtor is about to contractually bind herself to make. And even if the reaffirmation agreement contained no provision for monthly payment but merely stated the debtor's agreement to, in effect, waive her discharge as to that creditor, the debtor would immediately place herself directly in the line of fire of credit collection activity, including wage garnishment (in some states) that would only exacerbate the shortfall between income and living expenses.

[3] One reaffirmation agreement reviewed by the court contained, as an explanation, "financial assistance from friend." No further details were offered, though the agreement contemplated payments of nearly $1,500 a month over a period of 18 months, while the debtor's net after monthly expenses was just a little over $37.

[4] When the debtor is *pro se*, a reaffirmation agreement is not effective unless the debtor appears before the court pursuant to section 524(c)(6).

the directive of the statute, incorporates the language as Part E. This is what Part E says:

> I ... affirm the following to be true and correct:
>
> I am not represented by an attorney in connection iwth this reaffirmation agreement.
>
> I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of this reaffirmation agreement, and because (provide any additional relevant reasons the court should consider)
>
> Therefore, I ask the court for an order approving this reaffirmation agreement.

Form B240, Part E. Neither the form nor the statute make any provision for court review of undue hardship situations. If the debtor is represented by counsel, there will be no hearing. If the debtor is *pro se*, the motion incorporated in the form says nothing about undue hardship. Unless the court, on its own, undertakes to physically review every reaffirmation agreement filed, there would be no judicial review of undue hardship situations.[5] This analysis brings us to the problem that has led to this decision's being issued.

If one returns to Part C, one quickly sees that the *only choice* afforded debtor's counsel when Part D confirms that the reaffirmation agreement imposes an undue hardship on the debtor is either to check the box (and thereby represent that, notwithstanding the obvious shortfall in income, the attorney thinks that the debtor can still make the payment), or *not* to check the box (thereby making

---

[5] Congress seems tacitly to have presumed that courts *would* review every reaffirmation agreement filed. So long as the volume of case filings remains low, that might be an option. If case filings increase, however, the option would become unrealistic. Another option would be for the clerk to review and automatically set for hearing all cases involving undue hardship. Again, so long as filings are low, that is a possibility. However, the clerk's staff would have to page to Part D to see what is the net amount available for making payments, then find in Part A the payment contemplated by the agreement. The clerk would then set every agreement in which the number in Part D is less than the number in Part A. Hopefully, the clerk's staff will know where to look for these numbers. Presumably, the clerk's staff would not be required to check the debtor's arithmetic. The clerk in this district under pre-BAPCPA procedures automatically set reaffirmation agreements in any case in which the debtor was *pro se*. That is a fairly routine administrative task, by comparison.

Some courts are of the view that the only matters that ought to be set for hearings are those that represent a live case and controversy, and that a matter in which there is no adversary does not fit that standard and so should not be set, absent a clear statutory directive to the contrary. Section 524(c) in its originally enacted form in 1978 *did* call for just such hearings on *all* reaffirmation agreements, without regard to circumstance or representation by counsel. The current statute, by contrast, has no specific directive to conduct a hearing – only an assumption on the part of the drafters that some sort of review would be conducted.

no representation at all). What, if anything, is the court to make of a reaffirmation agreement in which Part C is *signed*, but no box is checked? What does it mean if the first box is checked, but not the second? Should any import be given to these choices? Should any presumptions be made? Are they express? Tacit? The questions are real because the potential liability for the attorney who signs the certification is real.[6]

In this case, the attorney in question did not check *either* box on Part C (*i.e.*, the box next to the certification by the attorney that he has made the requisite disclosures to the client, that the agreement does not represent an undue hardship, and that the agreement is voluntary, and the box next to the certification that, even though the agreement is an undue hardship, the attorney still thinks that the debtor can make the payments). The attorney *did* sign where indicated however. Because neither box was checked, the signature does not certify anything, though it does imply that *neither* of the statements applies.

On Part D, the debtors amended the certification, crossing out all of paragraph 1 except for the following: "I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt." After that strike out, the debtors' certification in Part D does not contain a statement of the debtors' income, a statement of the debtors' monthly expenses, or a statement of an amount left to make the reaffirmation payment. Also stricken is the sentence in which the debtors represent that they will be able to make

---

[6] Section 526(a)(2) prohibits the debtor's attorney (who is, in virtually all of these cases, a "debt relief agency") from making "... any statement in a document filed in a case or proceeding under this title that is untrue or misleading, or that upon the exercise of *reasonable care*, should have been known by such agency to be untrue or misleading." *See* 11 U.S.C. § 526(a)(2) (emphasis added). Thus, even negligently certifying a debtor's ability to make reaffirmation payments could subject the attorney to the range of penalties spelled out in section 526(c). Nor, presumably, would the attorney's exposure end there, as many non-bankruptcy remedies could also come into play, ranging from suits for malpractice, through grievance actions by state bars, and class action suits by aggrieved former clients. One could comfortably argue that an attorney who certifies a debtor's ability to make a reaffirmation payment when the debtor's monthly income less expenses leaves the debtor with not enough money to make that payment has been negligent, or at the least, did not exercise reasonable care to assure that his certification was not untrue or misleading. *See* 11 U.S.C. § 526(a)(2).

the payment in question, notwithstanding not having enough money left over. The debtors signed where indicated at the bottom of Part D. In a sense, this amendment resolves part of the attorney's problem, because it does not contain a signed certification that would facially demonstrate that the debtors cannot afford to make the payments they are about to promise to pay. By the same token, the strikeout means that the debtors are not certifying what the statute says they must certify – Form D contains the exact language specified in the statute. *See* 11 U.S.C. § 524(k)(6)(A) ("The statement in support of such agreement, which the debtor shall sign and date prior to filing with the court, *shall* consist of the following").

Although denominated as certifications by both the bankruptcy form and the statute, neither Part C nor Part D are statements made under penalty of perjury. *See* 28 U.S.C. § 1746.[7] Nonetheless they are statements made in a signed pleading, and so would fall under the rubric of Rule 9011 of the Federal Rules of Bankruptcy Procedure.[8] And, as earlier noted, false or misleading statements made by an attorney who qualifies as a debt relief agency could subject that attorney to

---

[7] This statute says as follows, in pertinent part:

> Wherever, under any law of the United States ... or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same, such matter may, with like force and effect, be supported ... by the unsworn ... certificate ... in writing of such person which is subscribed by him, as true under penalty of perjury ...

*Id.*

[8] Says the rule:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;

FED.R.BANKR.P. 9011(b).

the range of enforcement mechanisms set out in section 526(c).

To date, there are no published decisions construing section 524(k)(5). Clerks of court are having to decide how to handle the varying permutations of Form B240 with which they are presented. If the attorney does not sign Part C, then clerks will set the reaffirmation agreement on the court's docket, as though the debtor were not represented by counsel.[9] If the attorney *has* signed Part C, but has not checked either of the boxes, then the clerk has a problem. Should the clerk set the matter, treating it as though the debtors were not represented by counsel, just as the clerk does (at least in this district) with agreements not signed by counsel even though they are represented? Should the clerk not set the matter, on the presumption that the signature, with no boxes checked, means that the agreement does not impose an undue hardship on the debtor? Should the clerk set *all* reaffirmation agreements, on grounds that the clerk has no business trying to interpret the legal significance of how the document has been completed?[10]

The permutations go further. Suppose the attorney checks the first box, but not the second. Further suppose that Part D reflects that the agreement imposes an undue hardship (because there is not enough money left over to make the payment proposed to be made in the reaffirmation agreement). Should the clerk set that reaffirmation agreement? If Part D does *not* reflect an undue hardship, and the attorney has not checked the second box on Part C, should the agreement then be

---

[9] Section 524(d) says that "... if the debtor desires to make an agreement of the kind specified in subsection (c) of this section [*i.e.*, a reaffirmation agreement] and was not represented by an attorney during the course of negotiating such agreement, then the court shall hold a hearing at which the debtor shall appear in person ..." 11 U.S.C. § 524(d). This is language that was not amended by BAPCPA.

[10] Recall that the Judicial Conference amended Rule 5 of the Federal Rules of Civil Procedure to address what had become an increasingly common problem: clerks of court refusing documents for filing based on the clerk's determination that the pleading did not conform to a national or local rule. The 1991 comment to the amendment to Rule 5 said, with regard to the practice, "[t]his is not a suitable role for the office of the clerk, and the practice exposes litigants to the hazards of time bars ... the enforcement of [the federal rules] and of the local rules is a role for a judicial officer." *See* FED.R.CIV.P. 5 (Comment to 1991 Amendments). The language added to the rule reads as follows: "The clerk of court shall not refuse to accept for filing any paper presented for that purpose solely because it is not presented in proper form as required by these rules or any local rules or practices." *See* FED.R.CIV.P. 5(e).

approved without a hearing? Should the clerk be checking Part A (where the reaffirmation payment is reflected), Part D (where the undue hardship might be mathematically disclosed) and Part C (where the attorney is requested to make a certification regarding undue hardship)?

It seems obvious to the court that due administration of justice and insulating the clerk of court from exercising an inappropriate judicial function compel the court to set out clear rules as to how to handle these agreements. It is also vitally important to attorneys to know what their options are, given the potential liability that these certifications could impose on them. There are no guide posts, however. And the statute is stubbornly obtuse.[11] There is no choice but to come up with some sort of solution that rescues the clerk and gives lawyers clear guidance. The remainder of this opinion represents this court's attempt at that solution.

If the reaffirmation agreement is based in whole or in part on a consumer debt that is (a) not secured by real property of the debtor or (b) and is not a reaffirmation agreement with a credit union, then the debtor *must* complete Part D's financial information regarding total monthly income and total monthly expenses. *See* 11 U.S.C. § 524(c)(3)(B), (6)(A)(i), (d)(2). The information furnished in Part D is the way a presumption of undue hardship may be established, requiring an examination of other factors that might (at least theoretically) overcome the presumption. If this information is not furnished, no one will ever know whether the presumption has arisen – impairing the court's ability to comply with the obligations imposed by section 524(m)(1).[12]

---

[11] The major reason the form is a disaster is simple – it tracks the statute.

[12] That subsection states that the presumption arises until 60 days after its filing with the court whenever the information on Part D of the form – described in subsection (m) as a document required to be filed by subsection 524(k)(6)(A) – shows that there is not enough income left over to make the payments in the agreement. If the presumption arises, and is not sufficiently rebutted by the debtor's explanation in Part D, then the court may disapprove the reaffirmation agreement – but only on notice and a hearing, with notice given to *both* the debtor *and* the creditor, and with the hearing concluded *before* the debtor's discharge is entered. *See* 11 U.S.C. § 524(m)(1). Of course, there is no way the court would even *know* that the presumption of undue hardship has arisen if Form D is not completed, and thus no way the court could discharge its duty to at least review the form, much less set the matter for hearing on notice within the time frame specified by the statute.

Accordingly, if Part D of a reaffirmation agreement is not completed (unless the creditor is a credit union), the court will presume that a hardship is presented, and the reaffirmation agreement will be set for hearing. If Part D of the reaffirmation agreement is altered (as it has been in this case), the court must similarly presume that a hardship may be presented (again, because the calculations have not been furnished), and the clerk will set the reaffirmation for hearing.

If Part D of a reaffirmation agreement *is* completed, then the next step for the clerk of court is to look at Part C. If Part C is not signed, then the clerk will set the agreement for hearing.[13] If the second box on Part C is checked, and the attorney has signed the agreement, the clerk will not set the reaffirmation agreement for hearing. The reaffirmation agreement will be deemed approved.[14]

If the second box on Part C is *not* checked (regardless whether the first box has been checked or not), then the clerk shall forward the reaffirmation agreement to the judge for review.[15] The judge may decide whether to set the reaffirmation for hearing, and will promptly notify the clerk of same, so that the clerk can comply with the tight deadlines laid out in section 524(m)(1) ("No agreement shall be disapproved without notice and a hearing to the debtor and creditor, and such hearing shall be concluded before the entry of the debtor's discharge").[16]

---

[13] The lack of a signature is the equivalent of the debtor being unrepresented. The statute contemplates a hearing in the event the debtor signs the agreement without the benefit of counsel. *See* 11 U.S.C. § 524(c)(6)(A), (d).

[14] In essence, the court is accepting the attorney's representation that, in his professional opinion, both as counsel for his client and an officer of the court, the reaffirmation is not a hardship, despite the calculations on Part D that might indicate to the contrary. The court, in accepting that representation, is *not* endorsing the attorney's view of the matter. In other words, if it should later turn out that the attorney improvidently checked this box, the court's approval of the agreement will not shelter the attorney from liability.

[15] This review is mandated by section 524(m)(1), because the court must examine Part D to determine whether an undue hardship is presented, and if, notwithstanding that hardship, the explanation offered by the debtor is satisfactory. *See* 11 U.S.C. § 524(m)(1). It is not appropriate to require the clerk to make that determination, as it requires comparison of Part D to information provided in Part A regarding the monthly payment provided for under the agreement, and examination of the debtor's explanation.

[16] If the court is not going to approve the reaffirmation agreement due to undue hardship, it can only do so on notice and a hearing, but the hearing must be conducted *before* the discharge date. Thus, if the debtor and creditor wait until the last minute to file their agreement, they make it very hard for the court to set the matter for hearing with proper notice to *both* the debtor *and* the creditor. The best advice to counsel (and creditors) is to file reaffirmation agreements early.

These are the only permutations with which the clerk of court need concern itself. As for the lawyers involved, they may aid the clerk and court immensely by indicating (in those circumstances that require it) their desire that the matter be set for hearing. This can be done on Part C, below the signature of the attorney, with wording such as the following: "A hearing is requested." If this is done, then the clerk will not need to forward that reaffirmation agreement to chambers for review. Instead, the clerk can immediately set the matter for hearing, making it much easier to satisfy the notice and a hearing duties imposed by section 524(m)(1).

As for the case *sub judice*, the reaffirmation agreement will be set for hearing. In view of the impossibility of completing this decision prior to discharge day, the court, pursuant to section 105, hereby extends the time for approval of this agreement to the day of the hearing. The clerk of court is directed to afford notice to the creditor and the debtor (and counsel, of course). Ten days' notice is sufficient. *See* 11 U.S.C. § 102(1).

###